IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARIA DEL ROSARIO ORTEGA, et al. | |
| Plaintiffs | |
| v. | Civil No. 00-1475(SEC) |
| STAR KIST FOODS, INC.; et al. | |
| Defendants | |

## OPINION AND ORDER

Before the Court is Defendant's motion for summary judgment (**Docket # 56**). Defendant argues that Plaintiffs have failed to establish the jurisdictional amount necessary to sustain this case in federal court. Plaintiffs have duly opposed said motion (**Docket # 64**), and Defendant has filed a lengthy reply to the opposition (**Docket # 66**). Having considered the parties arguments, the Court will **GRANT** Defendant's motion and the case will be **DISMISSED WITHOUT PREJUDICE**.

### Factual Background

This is a products liability action arising out of an unfortunate event surrounding an allegedly defective can of Star Kist tuna. The main Plaintiff is a young girl (Beatriz Blanco) who allegedly cut her pinky finger on the can of tuna while having lunch at school. There is little controversy among the parties as to what actually happened afterwards. The girl was taken to the school infirmary, where she was initially assisted by the school nurse. When she arrived at the infirmary, the girl was bleeding from the wound. The nurse tried to stop the bleeding, cleaned the wound, and called a paramedic who worked at the school. At that point, the girl was crying and appeared anxious and nervous. When the paramedic arrived, he applied a butterfly suture to the wound. The girl was bleeding for somewhere between five (5) and fifteen (15) minutes. The wound was about a quarter of an inch deep, and about three-quarters of an inch long.

The girl's mother (María del Rosario Ortega) was at her home when she received a

**Civil No. 00-1475(SEC)**                                                                                                          2

telephone call from the school stating that the girl had cut herself. When she arrived she saw Beatriz on a stretcher at the school's infirmary, crying. Beatriz was already bandaged, and Mrs. Ortega was explained what had happened. She then took Beatriz to the emergency room of the Ashford Presbyterian Hospital, where it was determined that she had no sensation and could not move her finger. At that point, they were told that the finger's tendons and nerves were probably severed, and she had to be referred to a hand specialist, Dr. Segarra. The girl was then sent home for the night, and no medication was prescribed.

The next day, Dr. Segarra performed the surgery on Beatriz's hand, under general anesthesia. After the surgery Beatriz remained in recovery for a while, because she was vomiting considerably due to the anesthesia. Later that same day, Beatriz was discharged from the hospital with a cast, and was referred to a hand therapist, Linda Ford. Mrs. Ortega was with Beatriz during this whole time. Mrs. Ortega alleges that she could not sleep the night before the operation.

After the surgery, Beatriz underwent a series of successful physical therapies, leaving her finger, by her account, "normal." Beatriz suffers no discomfort when using her hand for daily activities. Beatriz's treating physician assesses she has a 3% partial impairment of her right dominant upper extremity and a 2% impairment of her whole person. Beatriz is the only Plaintiff alleging a physical injury in this case. According to her own deposition, she is able to physically participate in all activities in which she wants to participate, and her life is now back to "normal." Beatriz never saw a psychiatrist nor a psychologist regarding her alleged emotional damages.

The medical expenses related to the surgery amounted to $4,927.07, some of which were covered by Triple S. Plaintiffs' own treating physician stated in his report that Beatriz's prognosis is guarded in view that her condition may get worse with the growth of her hands, because her finger deformity may get worse. He also stated that she may require additional reconstructive surgery to improve her deformity and the range of motion of the affected

Civil No. 00-1475(SEC) 3

finger joint. She may also have a greater possibility of the development of degenerative joint disease at the affected finger joint. Nonetheless, Plaintiffs have stated that they do not foresee opting for any more surgical procedures. Furthermore, there are no readily calculable future medical expenses that can be reasonably expected to arise from the injury to Beatriz's finger.

Sergio Blanco is Beatriz's father. He is divorced from Mrs. Ortega, but alleges to have an excellent relationship with his daughter. He sees her once or twice a week, and on every weekend since the divorce. He was informed of the injury by phone the same day it happened. Mr. Blanco, as well as Mrs. Ortega and Patricia Blanco, Beatriz's older sister, all claim emotional damages for the pain and suffering inflicted upon them due to Beatriz's injury. However, Mrs. Ortega never sought counseling as a result of her alleged emotional suffering, and did not lose any income as a result of Beatriz's injury. Sergio Blanco's sole claim for damages arises from alleged emotional damages. However, he has never seen a doctor regarding his alleged emotional suffering. The same is true of Beatriz's older sister Patricia.

In their Amended Complaint, Plaintiffs allege damages in the following amounts: Beatriz Blanco – not less than $500,000 for physical damages and not less than $400,000 for emotional damages; Maria del Rosario Ortega – medical expenses of $4,927.07, estimated future medical expenses of $25,000, and mental anguish of $250,000; Sergio Blanco – emotional damages estimated at $175,000; and Patricia Blanco – emotional damages estimated at $150,000. However, Defendants argue that the above-described set of facts does not support a claim, for any of the Plaintiffs, which would meet the jurisdictional amount of $75,000.00.

**Applicable Law and Analysis**

District Courts have jurisdiction in diversity cases when the amount in controversy exceeds $75,000.00 28 U.S.C. § 1332(a). When evaluating whether this jurisdictional

Civil No. 00-1475(SEC) 4

amount is met, the Court may not aggregate several plaintiffs' claims. Rompe v. Yablon, 277 F. Supp. 662 (S.D.N.Y. 1967). For a claim to survive, it must allege the $75,000.00 minimum by itself.

It is well-settled law that, unless challenged, plaintiff's good faith allegations of damages will control the determination of the amount in controversy. See, e.g., Department of Recreation and Sports of Puerto Rico v. World Boxing Association, 942 F.2d 84, 88 (1st Cir. 1991) citing Gibbs v. Buck, 307 U.S. 66, 72 (1939). However, once the defendant challenges the amount of damages alleged in the complaint, then the burden shifts to the plaintiffs to establish facts indicating that, to a legal certainty, the claims involve more than the jurisdictional minimum. Id. at 88; St. Paul Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938); McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001); Wright, Miller & Cooper; Federal Practice and Procedure: Jurisdiction 3d § 3702. A case "can only be dismissed . . . for a failure to [satisfy the jurisdictional amount-in-controversy requirement] when it appears to a legal certainty that . . . the claim is really for less than the jurisdictional amount." Serrano v. Nicholson Nursery, Inc., 844 F. Supp. 73, 75 (D.P.R. 1994) (citing St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 289 (1938)). As such, the party seeking jurisdiction has the burden of demonstrating that it is not a legal certainty that the claim involves less than the jurisdictional amount. Dep't. of Recreation v. World Boxing Ass'n., 942 F.2d 84, 88 (1st Cir. 1991). The party can satisfy this burden by furnishing affidavits or amended pleadings. Id.

As the First Circuit has held, the proof offered by the plaintiffs must persuade the Court that someone familiar with the applicable law could objectively find the claim worth more than the jurisdictional minimum, otherwise dismissal must follow. See Jimenez Puig v. Avis Rent-a-Car Sys., 574 F.2d 37, 40 (1st Cir. 1978). Once diversity jurisdiction is challenged, the party invoking the court's jurisdiction has the burden of proving facts that

Civil No. 00-1475(SEC)                                                                                              5

support the allegation of jurisdiction by a preponderance of the evidence. Bank One, Texas, N.A. v. Montle, 964 F.2d 48, 50 (1st Cir). And lastly, courts must "rigorously enforce the jurisdictional limits that Congress chooses to set in diversity cases. Coventry Sewage Assoc. v. Dworkin Realty Co., 71 F.3d 1, 3 (1st Cir. 1995).

In this case, Defendant argues that none of the four Plaintiffs can establish that it is not a legal certainty that their claims fall below the jurisdictionally required amount of $75,000. Since this is a diversity action, Puerto Rico law will govern the amount of damages recoverable by the Plaintiffs. See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938); see also Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415 (1996). Accordingly, Plaintiffs carry the burden of establishing that, to a legal certainty, Puerto Rico law will support recovery of more than $75,000 for their individual claims. Plaintiffs, however, argue that damage awards in Federal Court may not be limited by state court decisions. While this might be true, it is also the case that similar Commonwealth court decisions are instructive as to the amount of damages that are appropriate in this case, even though they might not be controlling. As stated by Plaintiffs, "in diversity jurisdiction actions a federal court must look at state law to determine the nature and extent of the rights to be enforced." Accordingly, let us take a look at some Puerto Rico Supreme Court cases which are somewhat comparable to the case at bar.

In Muñoz v. New York & Porto Rico Steamship Co., 72 D.P.R. 582, 72 P.R.R. 543 (1951), the Puerto Rico Supreme Court upheld an award of $4,000 to a plaintiff who suffered a three and a half inch long gash on her hand that resulted in the permanent impairment of the function of her thumb. This award would be equivalent to an award of $27,661.54 in 2002 dollars,[1] which falls quite short of the jurisdictional amount. Furthermore, the injury

---

[1] All the adjustments made to the awards due to inflation were calculated using the CPI Inflation Calculator at http://data.bls.gov/cgi-bin/cpicalc.pl. The CPI inflation calculator uses the average Consumer Price Index for a given calendar year. This data represents changes in prices of all goods and services purchased for consumption by

sustained by the plaintiff in Muñoz was considerably larger than the one in the case at bar, and was considerably more serious, since it affected the plaintiff's thumb and not her pinky.[2]

In Ruiz Márquez v. Municipio de Toa Alta, RE-85-332 (1985), the plaintiff was awarded $3,000, and her parents were awarded $400 each, for several fractured fingers. These awards are equivalent to $5,013.01 and $668.40 in 2002 dollars, respectively. As a result of her injuries, the plaintiff was no longer able to play basketball or guitar. Plaintiff's expert assessed her incapacity at 1% of her left hand. In the present case, the Plaintiffs' physician assessed Beatriz's incapacity at 3% of her upper left extremity. Therefore, even assuming that Beatriz's injury was three times greater than the one in Ruiz Márquez (which the Court doubts, given Beatriz's deposition testimony), the damages would still only be compensable at just over $15,000.00. Likewise, Beatriz's parents' injuries would be compensable, according the Puerto Rico Supreme Court, at around $2,000.00. Again, this would fall way short of the jurisdictional amount.

Another case which is comparable to the one at bar is Lugo Irizarry v. Clínica Perea, RE-84-436 (1985). In that case, the plaintiff lost three fingers as a result of medical malpractice. As a result of the poor surgical and post-operative care, the plaintiff developed a condition in her left forearm and hand that led to the amputation of three of her fingers. The plaintiff's physicians assessed her disability as 33% of her entire person, as opposed to the 2% overall disability assessment in the case at bar. As a result of the amputations, the Plaintiff in Lugo Irizarry was no longer able to work at her job as a machine operator in a

---

urban households. This index value has been calculated every year since 1913. For the current year, the latest monthly index value is used.

[2] As Defendant points out, the importance of the thumb, when compared to the other fingers, is underlined by the fact that the presence of an opposable thumb is one of the distinguishing characteristics that separates primates from other mammalian life forms.

clothing factory. Nevertheless, even with such severe injuries, the Puerto Rico Supreme Court awarded amounts that would fail to satisfy the jurisdictional minimum. The Puerto Rico Supreme Court awarded the primary plaintiff the equivalent of $58,490.00 in 2002 dollars for physical damages and mental anguish. Likewise, the Court awarded the plaintiff's daughter the equivalent of $6,684.01 in 2002 dollars for mental anguish. Even in this case, where the injury was grossly more severe than the one in the case at bar, the jurisdictional amount was not met.

Plaintiff, however, cites several Puerto Rico Supreme Court cases which she claims substantiate her position. However, the Court believes that all these cases can be distinguished from the case at bar. In fact, the first case cited by Plaintiffs is very important for the issue of emotional damages, but actually works in Defendant's favor. In Hernández v. Fournier, 80 D.P.R. 93, 80 P.R.R. 94 (1957), the Puerto Rico Supreme Court held that family members have a right to recover for emotional damages (mental and moral damages) in a wrongful death action. In order to recover mental and moral damages, however, a family member, with no physical injuries of his or her own, must first prove the reality of the mental and moral damages suffered. As the Court explained in Ramos Rivera v. E.L.A., 90 P.R.R. 806, 809 (1964), moral damages shall be compensated only if "it is shown how those damages affected the health, welfare, and happiness of the injured...." Furthermore, "[i]n order to prevent an endless number of persons from bringing an action as a result of a single tortious act which causes the death of another person, the court need merely demand that each plaintiff fully justify the reality of the damages which he claims. **Thus, as to the moral damages, it is essential to prove deep moral suffering and anguish, and a passing affliction will not give rise to an action.**" Id. at 103-104 (emphasis added). The Supreme Court has consistently held that in this jurisdiction moral damages, sufferings, and anguishes can be compensated only if plaintiffs show that their emotional condition **has been affected substantially**. Duchesne Landrón v. Ruiz Arroyo, 102 D.P.R. 699, 702 (1974); Lameiro v.

Civil No. 00-1475(SEC)                                                                                              8

Dávila, 103 D.P.R. 834, 842 (1978). Therefore a court should dismiss claims for damages that do not rise to the level of deep moral suffering and anguish which substantially affected the plaintiff's emotional conditions, even in cases of wrongful death. It is highly questionable whether Plaintiffs Maria del Rosario Ortega, Sergio Blanco, and Patricia Blanco Ortega, none of whom suffered any physical injuries in this case, have established "deep moral suffering" at all. But let us take a look at the other cases which Plaintiffs cite in support of their position.

In Concepción Guzmán v. Autoridad de Fuentes Fluviales, 92 D.P.R. 488, 92 P.R.R. 473 (1965), the plaintiff suffered mental anguish damages, without any physical injuries, as a result of an electrical wire explosion near his house. However, unlike Plaintiffs in the case at bar, the plaintiff in Concepción Guzmán was treated by at least two psychiatrists for the mental and emotional afflictions he suffered as a result of the electrical wire explosion. He had symptomatic manifestations of his mental pain and suffering that are in stark contrast to the lack of such symptomatology in this case. The plaintiff in Concepción Guzmán suffered, *inter alia*, paralysis of the left side of his body, nausea, palpitations, dizziness, torticollis, headaches, intermittent shakes, insomnia, nightmares, irritability, incontinence, and even impotence. Furthermore, some of these symptoms persisted for months. Plaintiffs in this case have alleged no similar symptoms arising from their alleged mental suffering, and have proffered no psychiatric testimony as to the damages they have suffered.

Plaintiffs also cite Moa v. Commonwealth of Puerto Rico, 100 P.R.R. 572 (1972). In that case the Puerto Rico Supreme Court was confronted with a claim for moral damages made by the parents of a high school student who had his index finger partially amputated as the result of an accident in school. Although Moa is quite similar to the case at bar since both involved an injury to a child's finger, it must be noted that the injury in Moa was greater, since the plaintiff in that case had his index finger partially amputated. Furthermore, the plaintiff's injury in Moa is distinguishable in that he harbored on-going feelings of self-

consciousness about his amputated finger and his injury prevented him from participating in activities he earlier enjoyed, such as dancing. In this case, however, Beatriz has testified that she feels no lasting ill effects, that the injury has not limited her enjoyment of activities she enjoyed prior to the injury, and that she has not been made fun of by other children and has not been subject to embarassment or himiliation. Nevertheless, even the plaintiff in Moa would not have satisfied the $75,000 jurisdictional amount. The Court awarded the primary plaintiff the equivalent of $43,014.35 in 2002 dollars. On the other hand, the child's father was awarded for his pain and suffering only the equivalent of $12,904.31 in 2002 dollars. Since the injury in the case before us is even smaller than the one in Moa, we could not expect the other three Plaintiffs to reach the jurisdictional amount, either.

Ramos Acosta v. Caparra Dairy, 116 D.P.R. 60, 116 T.P.R. 78 (1985) involved claims for moral damages, brought by the family members of the deceased in a wrongful death action. In this case, the Court approved the following damage award payments: $50,000 to the father, $34,171.04 to the mother, $10,000 to the brother and $5,000 to the sister. These are roughly equivalent, in 2002 dollars, to $83,550.20, $57,090.99, $16,710.04, and $8,355.02, respectively. Under Ramos Acosta, then, only the father's claim would have met the jurisdictional minimum. But it is important to bear in mind that the father's claims arose from a wrongful death action and were still only barely over $75,000.00. Of course, we cannot reasonably imagine that the pain and suffering of losing a child is anywhere near the suffering sustained by Plaintiffs in this case due to Beatriz's injury of her pinky finger.

Lastly, Plaintiffs cite to Infante v. Leith, 85 P.R.R. 24 (1962). That case arose out of a dispute involving three dogs. Two larger dogs attacked the plaintiff's dog. In that occasion the Court awarded the plaintiffs a total of $1,500.00 ($8930.46 in 2002 dollars) for both nuisance and emotional damages. Even though we understand that it is far worse to suffer the trauma of having your child injured, than watching your dog being attacked, the damages awarded in Infante fall so far short of the jurisdictional limit that we fail to see how this case

Civil No. 00-1475(SEC)                                                                                          10

could possibly help Plaintiffs' cause.

Plaintiffs have also made reference to several federal court decisions which they understand favor their position. Once again. the Court believes that all these cases can be distinguished from the case at bar. Plaintiff first cites <u>Duchesne v. American Airlines Inc.</u>, 758 F.2d 27 (1st Cir. 1985). However, this case is inapplicable since the Court in that occasion made an analysis under the previous $10,000.00 jurisdictional minimum. Plaintiff in that case barely made it to the $10,000.00, but would not have been even close to fulfilling the current $75,000.00 requirement.

Plaintiff then cites a series of cases in which damages were awarded for pain and suffering in excess of the $75,000.00 limit. In all of these cases, however, the plaintiffs brought evidence of their emotional or neurological conditions, either as testimony of their treating psychiatrists or psychologists, or as expert reports on their ongoing mental or neurological suffering. See <u>Mejía Quirós v. Maxxam Property Corp.</u>, 108 F.3d 425 (1st Cir. 1997) (medical testimony about **continuing** headaches, mild depression, low self-esteem and post-traumatic stress); <u>Grajales Romero v. American Airlines, Inc.</u>, 194 F.3d 288 (1st Cir. 1999) (medical evidence of **continuing** neck pains, headaches, **loss of memory**, post-concussion syndrome, cervical sprain, **chronic** back pain and **loss of cognitive functions**); <u>Smith v. Kmart Corp.</u>, 177 F.3d 19 (1st Cir. 1999) (plaintiff **diagnosed** with post-traumatic stress disorder, chronic major depression difficulty sleeping mood changes and impairment of her social and occupational relationships which **required psychiatric treatment for three to five years**); <u>Havinga v. Crowley Towing and Transportation Co.</u>, 24 F.3d 1480 (1st Cir. 1994) (**expert testimony** to the effect that plaintiffs all suffered from acute post-traumatic stress disorder); <u>Heddinger v. Ashford Memorial Community Hospital</u>, 734 F.2d 81 (1st Cir. 1984) (plaintiff whose pinky finger had been amputated and who had suffered a loss of the use of her ring finger missed a significant period of work and underwent **extensive psychiatric counseling**); <u>LaForest v. Autoridad de Fuentes Fluviales</u>, 536 F.2d 443 (1st Cir.

Civil No. 00-1475(SEC)                                                                                    11

1976) (plaintiffs "substantially affected" by victim's **wrongful death**); Correa v. Hospital San Francisco, 69 F.3d 1184 (1st Cir. 1995) (plaintiffs' **expert psychiatrist** testified they suffered depression due to their **mother's death**). All of these cases can be distinguished from the case before us since the plaintiffs 1) suffered continuing neurological problems, and/or 2) presented evidence from medical experts proving their emotional disorders which resulted from the injuries. In the case at bar, none of the Plaintiffs claim to have suffered any such ongoing neurological problems, and they all failed to present any kind of medical evidence as to their emotional conditions. In fact, Plaintiffs admitted in their depositions that they did not require any type of psychiatric or psychological treatment or help.

On the other hand, Defendant cites several federal cases which the Court finds are much more comparable to the case at bar. This Court was confronted with a similar scenario in Tirado Toro v. Builder's Square, Inc., 986 F. Supp. 714 (D.P.R. 1997). In that case, this Court held that an accident resulting in fourteen (14) stitches to a plaintiff's head did not support a damage award in excess of $75,000. Although the Plaintiff in Tirado Toro alleged damages in excess of $80,000, the Court dismissed the claim after finding that no one who was familiar with the applicable law could objectively view the claim as being worth the jurisdictional minimum. Id., at 716. In finding that the case did not meet the jurisdictional amount, the Court relied heavily on the fact that there was no proof of permanent injury, obviously other than the scar, and that there was no evidence that further medical treatment would be necessary. Id. The Court finally stressed that there was no record of continued medical treatment for the **emotional injury suffered**, either. Id. In the case at bar, the plaintiffs have failed to provide proof of any medical treatment for their emotional conditions.

This Court also dismissed the complaint in Serrano v. Nicholson Nursery, Inc., 844 F. Supp. 73 (D.P.R. 1994) for failure to fulfill the jurisdictional amount requirement. The Court based its holding on the fact that there was no evidence or allegations regarding any

"consultations with any medical personnel for purposes of diagnosis or treatment as a result of the suffering." Id. at 76. The same was true in De Jesús v. Eastern Air Lines, Inc., 708 F. Supp. 470 (D.P.R. 1989), where the plaintiffs failed to bring any evidence that they had "consulted any medical personnel for purposes of diagnosis or treatment as a result of the emotional upset suffered." Id. at 472. Accordingly, the Court in De Jesús concluded that the plaintiffs had "failed to show that their emotional condition ha[d] been affected substantially." Id. at 473. Plaintiffs in the case before us have similarly failed to bring any evidence to prove that their emotional suffering was chronic, ongoing, or more severe than the temporary shock of having to deal with a loved one's cut on a finger.

Finally, in another comparable case Bewley v. Sims, 438 F. Supp. 708 (D. Md. 1977), Plaintiff claimed damages in excess of the jurisdictional minimum resulting from a fight at a Super Bowl party. Although Plaintiff suffered a broken nose and two black eyes, the Court dismissed the case for failure to establish the jurisdictional minimum, noting that the injuries would not be permanent. See also Turner v. Wilson Line of Massachusetts, 242 F.2d 414, 418-19 (1st Cir. 1957) (jurisdictional amount not met by a claim for compensation for seven to eight hours of headache, weakness, dizziness, nausea and vomiting). Having all these precedents in mind, let us take one last close look at the allegations and injuries suffered by each one of the individual Plaintiffs.

Beatriz Blanco Ortega

Beatriz is the only Plaintiff alleging physical injuries in this case. Beatriz's injury is a cut on her right, little pinky finger. Her injury did not initially require stitches to control the bleeding, but rather a butterfly suture. As a result of the injury, Beatriz had a relatively minor surgery to repair a tendon in her finger, which was performed on an outpatient basis. Beatriz did suffer some nausea and vomiting during the day of the surgery, as a result of the anesthesia used, however, no such symptoms persisted after that. According to Plaintiffs' own medical report, she suffers no discomfort when using her hand for common activities,

even though she has a 3% partial permanent impairment of her right dominant upper extremity and a 2% impairment of her whole person. According to her own deposition, none of Beatriz's activities have been permanently limited because of the injury. Although the Complaint alleges that Beatriz is no longer able to play volleyball, she stated in her deposition that she is able to play basketball and participates fully in her school's gym class. In fact, her deposition shows that she no longer plays volleyball because she chooses not to do so. Furthermore, she stated that her finger now feels "normal." Beatriz participated in successful physical therapy of the finger and now agrees that her life is "back to normal."

Beatriz suffers from no significant permanent injury, other than a scar on the interior portion of her finger and a slight reduction in the range of motion of her little finger, which her treating physician concluded gave her a 3% incapacity of her right arm, or a 2% incapacity of her whole person. According to that same physician, the "grip strength" on her right hand (on which the injury occurred) is greater than the "grip strength" on her uninjured left hand. By her account, her finger is "normal," her life has returned to "normal," and none of her life activities have been permanently affected. Furthermore, aside form the physician's vague and general statement to the effect that Beatriz might require further surgery in the future, Plaintiff has presented no evidence that any such future damage may in fact occur with any certainty. Such an award of future damages would, therefore, be completely conjectural and uncertain, especially considering that Plaintiffs have averred that Beatriz does not wish to opt for such further surgery.

Therefore, Plaintiff has only established that she could be compensated for the 3% incapacity mentioned above. Having considered all the above cited cases we find that it is a legal certainty that such an injury would not be compensated in any amount close to or larger than the jurisdictional minimum. In fact, the ever-popular compendium of damage awards under Puerto Rico tort law, Antonio J. Amadeo Murga, El Valor de los Daños en la Responsabilidad Civil, Tomo II, at 745 and 748, provides several examples of awards, from

Commonwealth and federal courts, based on the total (100%) incapacity of a person's arm. The average award is equivalent to about $88,768.00 in 2002 dollars. Id. Based on this, Beatriz's 3% incapacity of her arm should be compensated at an average of $2,663.04 (3% of $88,768.00). In addition, Amadeo Murga provides two tables of emotional damage awards as a result of trauma to the hands or fingers. Id. at 780 and 791. The average award for such a trauma is equivalent to around $34,252.60. We should be aware that this average does not take into account the severity of the injury, and that, in all likelihood, Beatriz's particular injury would be compensated with an amount in the smaller side of this bell curve. This is especially true given the fact that, as discussed above, Beatriz has failed to provide any evidence of any psychological injury. But, even if we were to take these averages and add them together (the incapacity and the emotional trauma compensation averages), they would only amount to $36,915.64, which is less than half the jurisdictional minimum. As such, it is a legal certainty that Beatriz's claim does not involve more than the jurisdictional amount and must, therefore, be dismissed.

### María del Rosario Ortega

Maria del Rosario Ortega is Beatriz's mother. She claims damages in three categories: (1) incurred medical expenses totaling $4,927.07; (2) estimated future medical expenses of $25,000; and (3) mental anguish and suffering in the amount of $250,000. With respect to the incurred medical expenses, Defendant correctly points out that some of these costs were covered by Plaintiff's medical insurace plan with Triple S. Defendant also correctly states that the application of the Collateral Source doctrine under Puerto Rico law is done on a case-by-case basis. Nieves Cruz v. Universidad de Puerto Rico, res. el 31 de abril de 2000, 2000 TSPR 78. However, even assuming that the collateral source doctrine were to be applied in this case, Plaintiff's incurred medical expenses fall very short of the jurisdictional amount. In terms of future medical expenses, as discussed above, both the treating physician's report and the Plaintiffs' depositions show that any such future medical

**Civil No. 00-1475(SEC)**                                                                 15

expenses are entirely speculative, and any future surgery will be entirely elective. Furthermore, in said depositions Plaintiffs stated that no further surgery was going to be pursued.

Finally, in terms of emotional damages, we should remember that Puerto Rico law supports a claim for emotional damages, only in cases where the plaintiff's emotional condition is "substantially affected." The courts have developed a number of factors to help in the determination of whether or not a plaintiff has been "substantially affected." As discussed above, the courts inquire as to whether a plaintiff has undergone a hospitalization; lost income; consulted a doctor regarding the alleged emotional suffering; or missed work as a result of the alleged suffering. In this case, the record shows that none of the Plaintiffs has sought any such psychiatric treatment, sustained any such loss of income or wages, or been "substantially affected" by the cut to Beatriz's little finger. None of the Plaintiffs was hospitalized or received any psychological treatment at all. And even if we were to assume that the pain and trauma suffered by Plaintiffs was enough to state a cause of action for emotional damages under Puerto Rico Supreme Court precedent, we must conclude, based on the case law discussed above, that the amount of damages would be far less than the $75,000.00 jurisdictional minimum. But let us say, for the sake of argument that Mrs. Ortega could theoretically be awarded as much as Beatriz, who was the person actually injured, due to her emotional distress, then, based on Amadeo Murga's figures as discussed above, Mrs. Ortega would only be entitled to less than $40,000.00 for the emotional damages arising from her daughter's trauma to the hand or fingers. Accordingly, Mrs. Ortega's incurred medical expenses ($5,000.00) are not nearly enough, even with such an award of emotional damages (which we do not find would be reasonable anyway), to reach the jurisdictional minimum. As such, her claim must also be dismissed.

<u>Sergio Blanco</u>

Sergio Blanco is Beatriz's father. Mr. Blanco is divorced from Beatriz's mother.

Beatriz lives with her mother. Mr. Blanco alleges $175,000 in emotional damages. Again, Mr. Blanco has never been hospitalized as a result of his daughter's injury. Like Mrs. Ortega, Mr. Blanco has never consulted anyone about his alleged emotional suffering. Although Mr. Blanco did miss some work because of the injury, the work was limited to less than half of a day. And although Mr. Blanco missed approximately half a day of work, he suffered no loss of income. Mr. Blanco's relationship with his daughter is not close in terms of time spent together. She does not usually spend nights at his house. Even though they both live in the San Juan metropolitan area, he does not pick her up from school. He did not take her to any of her doctor or therapy appointments for her injured finger. He did not go to see his daughter's volleyball games. And when he learned of his daughter's injury, he did not leave work to meet her at the hospital. In fact, when asked if Beatriz's injury has "substantially affected" him, Mr. Blanco replied that it is "[n]ot like I'm going to die, but I don't like it a bit." However, such a temporary discomfort resulting from the unfortunate injury of a loved one is not the type of deep moral suffering and anguish that will give rise to an action for emotional damages under Puerto Rico law. In any case, as discussed above with respect to Mrs. Ortega, any compensation for such an injury would not come anywhere near the jurisdictional amount. As such, Mr. Blanco's claim must also be dismissed.

### Patricia Blanco Ortega

Patricia Blanco Ortega is Beatriz's older sister. Patricia was a college student at the time of the injury to Beatriz and was not in Puerto Rico. Patricia claims emotional damages in the sum of $150,000. Like her Co-plaintiff family members, Patricia was never hospitalized as a result of her alleged emotional suffering. Nor did she ever consult anyone regarding her alleged emotional injuries. She did not miss any school as a result of the injury to her sister's little finger, and was in no other way "substantially affected" by the injury. As such, everything discussed above with respect to Mrs. Ortega and Mr. Blanco is equally applicable to Patricia's claim. Therefore, her claim must also be dismissed.

Civil No. 00-1475(SEC)                                                                    17

---

### Conclusion

Although this Court is sensitive to Plaintiffs' real and heart-felt suffering due to the unfortunate incident in which Beatriz cut her finger, it cannot renounce its identity as a court of limited jurisdiction. This Court takes very seriously the emotional distress that people suffer as a result of the pain their loved ones might endure, however, it also takes very seriously its responsibility to preserve its legitimacy by respecting the limits of its jurisdiction. The Court cannot engage in a therapeutic jurisprudence which compromises its duty to protect the legitimacy of the federal courts. Plaintiffs, despair not, the Commonwealth courts await! As such, and for all the reasons discussed above, Defendant's motion for summary judgment is **GRANTED**, and this case will be **DISMISSED WITHOUT PREJUDICE**.

**SO ORDERED.**

In San Juan, Puerto Rico, this _18th_ day of July, 2002.

SALVADOR E. CASELLAS
United States District Judge

s/cs:to (3)
attys/pts
in ICMS

JUL 2 8 2002